IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:10-00009 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| JEREMY SETH TUMMINS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Before the Court is the United States's motion to reconsider (Docket Entry No. 65) the Order (Docket Entry Nos. 63 and 64) granting, in part and denied in part, the Defendant's motion to suppress. The Government earnestly contends, in sum, that the Court erred as a matter of fact and law in concluding that the officers' interview of Defendant in his home was custodial and that the Defendant's statements were obtained in violation of Miranda v. Arizona, 384 U. S 436 (1966). The Government's specific contentions are as follows:

(1) that the Court's determination relied upon, in part, "that the officers' knowledge about the Defendant prior to the search warrant favors a finding of custody . . ." (Docket Entry No. 63, Memorandum at 27) and this determination lacks a factual basis because the officers did not convey this information to the Defendant so that the Defendant was free to terminate the interview.

(2) that the Court's reliance on United States v. Pacheco-Lopez, 531 F.3d 420, 425 (6th Cir. 2008) is erroneous as the defendant there was in physical custody with handcuffs when the interrogation commenced, whereas here the Defendant was not in custody, particularly in the initial phase of the interview;

(3) that the Court failed to consider "the location of the interview and how this factor impacted whether the interview was custodial";

(4) that on the "length of the questioning" factor, the Court erred in finding that the "government had not shown that the time of the questioning was necessary to seize the Defendant's two computers and any related equipment that the search

1

warrant authorized" and because the Defendant invited the officers into the residence and never told the officers to leave, the length of time the officers were in the home is immaterial;

(5) that the Court lacks precedent for its conclusion that "psychological dominance" of the defendant warrants a finding of custody (Docket Entry No. 63 at 30); and

(6) that the Court's reliance on Missouri v. Seibert, 542 U.S. 600, 616-17 (2004) and Dixon v. Houk, 627 F.3d 553, 558 (6th Cir. 2010) is erroneous because the defendants in those decisions were interrogated in the clearly custodial setting of a police station and were in custody.

(Docket Entry No. 65). The Defendant filed a response contesting these assertions. (Docket Entry No. 69). For the reasons set forth below, the Court grants the motion to reconsider, but respectfully reaffirms its earlier ruling.

As threshold observations, the Court applied the Sixth Circuit precedents requiring consideration of totality of the circumstances applicable to police interviews in a defendant's home. (Docket Entry No. 62 at 22-31). For the Government's custody contentions, the Court cited Supreme Court precedent as well as Sixth Circuit and other circuits' decisions holding a custodial interrogation can occur in a person's home. Id. at 22-23.

As to the specific contentions, first, the Government challenges as baseless the Court's statement that the officers conveyed to the Defendant their knowledge acquired about him prior to the execution of the search warrant.[1] As a factual matter, the officers read to the Defendant the state judge's search warrant's finding that probable cause existed that the Defendant had child pornography on his computer. (Docket Entry No. 63, Memorandum at 3). Thereafter, Lieutenant Lavasseur repeatedly conveyed to the Defendant the results of his investigation that

---

[1] The Court is not ruling that the officers were required to disclose the search warrant. Given the officers' disclosure of the warrant's finding about the Defendant's computer containing child pornography, those disclosures are relevant to the custody issue under Stansbury.

2

the Defendant was guilty of possession of child pornography. Id. at 6-9. As to the relevance of these facts, the Court cited Stansbury v. California, 511 U.S. 318, 324 (1994) that an officer's subjective belief about the Defendant is relevant to the custody issue where the officer's beliefs about the Defendant's guilt is clearly conveyed to the Defendant, by word or conduct. Here, with the officer's reading of the warrant and statements of the Defendant's guilt, the Court concludes this contention lacks merit. Under Stansbury, such statements are relevant to the custody issue.

The Government's second and sixth contentions are related as both raise the applicability of Pacheco-Lopez. There, the defendant was handcuffed during his home interrogation. 531 F.3d at 422. Yet, as evidenced by the precedents cited in the Court's Memorandum (Docket Entry No. 63 at 22-31), the test for custody at a defendant's home is "whether a reasonable person in that position would 'have felt he or she was not at liberty to terminate the interview and leave," id. at 21(quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)) or "to ask the investigators to leave" Id. at 22 (quoting United States v. Panak, 552 F.3d 462,468 (6th Cir. 2009). Consideration of that issue is viewed from a Defendant's perspective. Id. at 20 (citing Illinois v. Perkins, 496 U.S. 292 (1990)). In a word, for an in-home interview, physical custody is not required for a determination of custody under Miranda.

Here, the Court deemed the totality of the circumstances demonstrated a police dominated atmosphere in the Defendant's home. Such dominance establishes that the Defendant was in custody for Miranda purposes. With that custody finding, Pacheco-Lopez's holding that prohibits investigatory questioning in a defendant's home, is fully applicable. With the custody finding, the incriminating questions and the lack of any Miranda warnings, the Court concludes again that Missouri v. Siebert, 542 U.S. 600 (2004) and Dixon v. Houk, 627 F.3d 553 (6th Cir.

3

2010) clearly apply to prohibit interrogation tactics that circumvent Miranda. The officers here clearly circumvented Miranda by knowingly securing incriminating answers without **any** Miranda warnings.

As to whether that the Court failed to consider "the location of the interview and how this factor impacted whether the interview was custodial," the Court expressly addressed this factor. (Docket Entry No. 63 Memorandum at 27). Despite the observation that a person is more comfortable in his or her home, here Mrs. Tummins clearly stated that the Tumminses were unaccustomed to law enforcement officers in their home. The transcript reflects that with the officers' forceful questioning and accusations, the Tumminses were not comfortable in their own home, as evidenced by Mrs. Tummins' reaction and exchange with Lieutenant Lavasseur, as well as the Defendant's crying midway during the interview. As stated in United States v. Craighead, 539 F.3d 1073, 1083 (9th Cir. 2008) that the Sixth Circuit cited approvingly in Panak, "to be free to leave is a hollow right if the one place the suspect cannot go is home." As stated earlier, this factor is only one factor to be considered under Panak. Id. at 22-23. The Court respectfully concludes that this contention lacks merit.

The issue of the time during the interview when the Defendant was in custody is moot. Here, the officers never gave the Defendant any Miranda warnings at any time. Their omissions constitute a deliberate tactic to circumvent Miranda. In such instances, the appropriate remedy is that entire statement must be excluded. Seibert, 542 U.S. at 622; Dixon, 627 F.3d at 557.

Moreover, the Court earlier concluded that, in any event, the Defendant was in custody during the initial part of the interview. The Court was convinced that Lieutenant Lavasseur conducted a psychological "bull rush" of the Defendant at the onset of this interview. The

phrase "Bull rush"[2] is a sports term that refers to "a direct forceful rush by a defensive player in football" that immediately puts his opponent off balance. From the evidence and transcript of the interview, the Court remains convinced that Lieutenant Lavasseur psychologically intimidated the Defendant from the inception of the interview, as evidenced by Lieutenant Lavasseur's asking incriminating questions and the Defendant's incriminating answers that begin at page 3 of the transcript of the interview.

The Government's fourth contention is that the "the length of the questioning and the time necessary to search the Defendant's computers are not relevant facts because the Defendant invited the officers into his home. The Court respectfully disagrees that the Defendant "invited" the officers into his home. In it ordinary usage, the word "invite" means "to **ask** in a kindly, courteously or complimentary way." American College Dictionary at 642 (1965) (emphasis added). Here, the officers appeared at the Defendant's home unsolicited and without any prior contact from the Defendant. The officers **asked** to enter the Defendant's home to conduct their "investigation." To be sure, the Defendant agreed to allow the officers to enter the Defendant's home, but the Court finds that the Defendant did not invite the officers to his home.

As to length of the interview, the officer had the search warrant that prompted their presence at the Defendant's residence. During the interview, Lieutenant Lavasseur told the Defendant, "I can just take your stuff and go." (Docket Entry No. 51 at 35). This statement suggest that two hours were not necessary to execute the search warrant and supports the Court's conclusion that the officers were actually at the Defendant's home to conduct "investigatory questioning" prohibited by Pacheco-Lopez.

---

[2] http://www.meriam-webster.com/dictionarybull%20rush

As to the lack of precedent for the Court's conclusion of the officer's "psychological dominance" of the Defendant, the Miranda warnings were expressly to protect against police tactics that the Court characterized "psychologically ... oriented." (Docket Entry No. 64, Memorandum at 17) (quoting Miranda, 384 U.S. at 448)). Miranda's progeny also focus on the need to protect a citizen from a "police dominated atmosphere," Illinois v. Perkins, 496 U.S. 292, 296 (1990) and "psychological ploys" Rhode Island v. Innis, 446 U.S. 291, 299 (1980) as well as "coercive" and "inherently compelling pressures." J.D.B. v. North Carolina, 131 S. Ct. 2349, 2401 (2011). The phrases "psychologically ... oriented," "psychological ploys" and "police dominated atmosphere" are synonyms for the Court's phrase "psychological dominance." The Court concludes that this contention lacks merit.

For these reasons, the Court grants the United States's motion to reconsider, but respectfully affirms its earlier ruling.

An appropriate Order is filed herewith.

**ENTERED** this the 20th day of October, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge